William P. Allen:  011161
**ALLEN LAW FIRM LLC**
61 West Willetta St.
Phoenix, AZ 85003
Telephone: (602) 478-5269
Email:   ballen@azbar.org

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Dominique Rose,<br><br>     Plaintiff,<br><br>v.<br><br>Dalton Corporation d/b/a Chica's Cabaret, Regina Scott, Phillipe Howery, and Jose Navaoruz<br><br><br>    Defendants | Case No.:  2:15-cv-02562<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

   Defendants move for summary judgment pursuant to Fed.R.Civ.P 56(a) on the grounds that Dalton Corporation was not an enterprise engaged in commerce during the time encompassed by Plaintiff's claims, and therefore, she cannot establish essential elements of her Fair Labor Standards Act and Arizona Minimum Wage Act claims.  Defendants Scott and Howery also move for summary judgment on the grounds that they are not "employers" subject to suit under state and federal law.

   This motion is supported by the attached memorandum of points and authorities and separate statement of facts and exhibits filed herewith, and incorporated by reference.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

This is a wage dispute arising under the Fair Labor Standards Act (FLSA) and Arizona Minimum Wage Act.  This motion addresses Plaintiff's claims for minimum wage and overtime payment, and the lack of "employer" status attributable to Defendants Scott and Howery.

First, the FLSA "imposes its requirements, not on every 'enterprise,' but only on an 'enterprise engaged in commerce or in the production of goods for commerce.'  One of the statutory elements of the latter term is the dollar-volume limitation, which in this case is $500,000 annually." *Falk v. Brennan*, 414 US 190, 197 (1973); *see also*, 29 U.S.C. 203(s)(1), 206(a), and 207(a)(1).  Likewise, an Arizona "small business" that earns less than $500,000 in gross revenue annually is excluded from the definition of an "employer." A.R.S. 23-362 (B)-(C).  Here, Dalton Corporation did not have annual gross revenue of $500,000 during the time covered by this action.[1]

Second, Scott and Howery were not "employers" under the FLSA or Arizona law because they were neither exercised sufficient control over the nature and structure, nor economic control, over Plaintiff's relationship with Dalton Corporation.

**SUMMARY OF FACTS**

**Background**

Dalton Corporation is an Arizona corporation and has operated a nightclub at 2802 N. 35th Ave. since 1997—first known as "Mustang Sally's" and currently as "Chicas Cabaret." (SOF 1)  The club is classified as an "adult cabaret" by the City of Phoenix, *Phoenix Code Sec*. 10-131(2), because it offers topless dancing. (SOF 2).

Before working at an adult cabaret, dancers must be licensed *annually* by the City as an "adult cabaret performer."  (SOF 2, 8), *see Phoenix Code Sec*. 10-131(3) and 133(B) and

---

[1] The complaint was filed December 16, 2015. (Doc # 1).  Assuming the state and federal maximum limitations period of 3-years applies, claims occurring before December 16, 2012 are barred. 29 U.S.C. 255(a), A.R.S. 23-362.

137(A).  Phoenix and Arizona Alcohol Control Board rules dictate standards for both "adult cabarets" and "adult cabaret performers."  (SOF 7), *see.*, A.A.C. R19-1-308, 309 (performer age limits and conduct); *Phoenix Code Sec*. 10-148(A) (authorization to work, orientation, and conduct of performers and managers), and (B) (recordkeeping, including dates and times a performer works).  Section (C) of the ordinance requires regular submission of rosters to the City listing all performers authorized to work at the club.  (SOF 10).

The club is subject to inspection at any time by City and Alcohol Control Board authorities, and the failure of a manager to follow their rules can lead to fines and suspension or revocation of the club's cabaret and/or liquor license.  (SOF 6).

The club enforces City and State regulations regarding performer conduct, as well as health and safety standards, but has few "work rules" for performers (other than those required by regulation) such as fighting or theft. (SOF 6, 12). The club does not restrict performers from working at other clubs, or limit their breaks, or require performers to work any set schedule. (SOF 11, 12).

Only Chicas' customers pay performers to dance, either by tipping them on stage, or paying cash for individual performances. (SOF 14).  Performers retain custody and control of all money received from customers and pay an agreed license fee when finished working for the day.  (SOF 14).

Daily reports kept by the club show Plaintiff first presented her license and worked on May 20, 2014.  (SOF 16).  Her work authorization notice was submitted to the City the following day. (*Id.*)  During 2014, she worked a total of approximately 30 hours over eight days at the club, the last being October 24, 2014. *(Id.)*.  Defendants have no other record of Plaintiff performing at the club. *(Id.)*

Plaintiff's complaint, at paragraph 24, states she worked as a dancer at the nightclub from "approximately January 1, 2011 and April 30 2014, when Plaintiff left her employment with Defendants."  (Doc #1 ¶ 24).

*Dalton Was Not an Enterprise Engaged in Commerce*

Dalton's annual volume of business, based on federal tax returns for 2011 thru 2014, was:  2011--$268,677; 2012--$135,932; 2013--$153,357; and 2014--$542,671.  (SOF 3). Most of the sales in 2014 ($371,835) occurred in the third quarter of that year as a result of club remodeling, increased advertising, and numerous special events.  (SOF 4).

*Scott and Howery Were Not "Employers"*

During the time covered by this action, Defendants Regina Scott and Phillipo Howery worked as licensed "adult cabaret" managers at the club during the relevant time period. (SOF 5, 6).  Each was paid a salary and neither had an ownership interest in Dalton Corporation. (SOF 17).

Their duties included receiving and paying for deliveries and supplies, overseeing and assisting bar and security employees, and enforcement of City and State regulations.  (SOF 6, 18).  They also regularly granted performers access to the club and its customers upon presentation of a license and other information required by City regulations, and agreement to pay the daily fee.  (SOF 8, 9, 11).  Because performers choose the dates and times they work, the club does not limit their numbers.  (SOF 11).  In 2014, for example, more than 200 performers were granted access, but far fewer worked on any given day or time. (SOF 11).

Once hired, the performer receives an orientation from the manager as required by City rules, and when she works, the manager records her beginning and ending times and collects the house fee when she leaves. (SOF 9), *see, Phoenix Code* 10-148(B).   Managers also terminate performers from time to time, primarily for violation of applicable conduct rules, and to a lesser degree, for things such as license revocation, theft, or fighting. (SOF 15).

However, it was Dalton's president and shareholders that determined all economic matters such as house fees, cover charges, bar prices and special events. (SOF 5).

## LEGAL ANALYSIS

**Defendant Dalton Corporation Was Not An
Enterprise Engaged in Interstate Commerce**

Both the minimum wage and overtime provisions of the FLSA apply only to employees "engaged in [interstate] commerce or in the production of goods for

4

commerce, or ... employed in an enterprise engaged in commerce."  29 U.S.C. 203(b), 206(a), 207(a)(1).  As noted above, enterprises with an annual dollar volume less than $500,000 are not covered under federal or Arizona wage laws.  29 U.S.C. 203(s)(1), A.R.S. 23-362 (B)-(C).

According to Department of Labor regulations applicable computing the annual dollar volume, "In order to determine, when there may be doubt, whether an enterprise or establishment has an annual gross volume of sales…in excess of the amount specified in the [FLSA]," the employer must undertake a 12-month "look back" at the end of each quarter to determine coverage.  29 C.F.R. 779.266(b).

Where, as here, the enterprise exceeds the required threshold in a given quarter, coverage under the FLSA begins the first of the month following that quarter.  *Id.* at 779.268. Dalton Corporation did not exceed $500,000 annual sales until the end of the third calendar quarter of 2014, and it was not covered by the FLSA or Arizona's Minimum Wage Act until November 1, 2014.

### Dalton's Managers Didn't Exercise Control Sufficient to Qualify as FLSA "Employers"

Existence of a FLSA "employer-employee" relationship does not depend on "isolated factors but rather upon the circumstances of the whole activity" *Boucher v. Shaw*, 572 F. 3d 1087, 1091 (9th Cir. 2009) (citations omitted). Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act.  *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir.1999).

However, these "control" concepts are not applied in a manner that makes all managers and supervisors of an enterprise culpable "employers" under the FLSA.  *See, Baystate Alternative Staffing, Inc. v. Herman*, 163 F. 3d 668, 679 (1st Cir. 1998), *cf.*, *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (factors provide a useful framework for analysis, but they are not etched in stone and will not be blindly applied).  As stated in *Baystate Alternative Staffing, Inc. v. Herman*,

> If…the significant factor in the personal liability determination is simply the exercise of control by a corporate officer or corporate employee over the "work situation," almost any supervisory or managerial employee of a corporation could be held personally liable for the unpaid wages of other employees and the civil penalty related thereto. We adhere to the view expressed in [*Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983)] that such an expansive application of the definition of an "employer" to a personal liability determination pursuant to the FLSA is untenable.

*Id.* at 679.  The wisdom of this caveat is clearly applicable to a case, like this, involving a highly regulated business.

Although Scott and Howery had authority to hire and fire performers, supervise their conduct, and keep required records related to their attendance, City of Phoenix regulations minutely controlled their actions.  Stated another way, they did not exercise any real "control over the nature and structure of the employment relationship" between the club and performers.

As one has court has put it, "neither requiring a worker to comply with federal and state law nor compliance with insurance requirements can be competent evidence of control…[nor is] a putative employer requiring workers to meet mandatory regulations" evidence of control in a highly regulated business.   *Giltner, Inc. v. Idaho Dept. of Commerce and Labor,* 145 Idaho 415,179 P.3d 1071, 1075 (2008)(footnote and citation omitted).

Likewise, neither Scott nor Howery exercised economic control over the performers' relationship with the club.   First, they had no ownership interest in the club.  Second, performers choose to obtain a license, the place where they work, the dates and times they work, how many breaks they take at work, and whether they want to drink while at work.  Third, Dalton's owners control the economic relationship with performers, including setting the house fee and policies concerning its collection.

Compare the duties of Scott and Howery to managers in *Lambert v. Ackerly,* where the Ninth Circuit upheld a finding of liability against a chief operating officer and a chief executive officer where the officers had a significant ownership interest with operational control of significant aspects of the corporation's functions; the power to hire and fire employees; the power to determine salaries; and the responsibility to maintain employment

records.  *Id.* at 1001-02, 1012; *see also, Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir.1987) (the individual's control of the enterprise and responsibility "in whole or part for the alleged violation" that is of central concern).  Scott and Howery were not Plaintiff's "employers."

WHEREFORE, Defendants ask the Court to grant summary judgment dismissing all claims against Ms. Scott and Mr. Howery, as well as claims designated Counts 1-4 of Plaintiff's complaint.

**Dated: February 17, 2017**

ALLEN LAW FIRM
/s/ William P. Allen

I hereby certify that on Feb. 17, 2017, I electronically filed this document with the Arizona District Court Clerk

**COPY** of the foregoing served electronically Feb. 17, 2017 on

Christopher J. Bendau
Clifford P. Bendau, II
P.O. Box 97066
Phoenix, AZ 85060
Attorneys for Plaintiff

By: /s/ William P. Allen